**SO ORDERED.**

**SIGNED this 24th day of June, 2021.**



_Lena Mansori James_
_____
LENA MANSORI JAMES
UNITED STATES BANKRUPTCY JUDGE

---

## UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## WINSTON-SALEM DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| Northwest Child | ) | Chapter 11 |
| Development Centers, Inc., | ) | |
| | ) | Case No. 20-50632 |
| Debtor. | ) | |
| —————————————— | ) | |
| | ) | |
| City of Winston Salem and | ) | |
| County of Forsyth, | ) | |
| | ) | |
| Plaintiffs, | ) | Adv. Pro. No. 20-6194 |
| v. | ) | |
| | ) | |
| Northwest Child | ) | |
| Development Centers, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| —————————————— | ) | |

## MEMORANDUM OPINION AND ORDER

THIS ADVERSARY PROCEEDING comes before the Court on the motion for

summary judgment filed by the City of Winston-Salem and County of Forsyth

(collectively, the "Plaintiffs") and the cross-motion for summary judgment filed by

Northwest Child Development Centers, Inc. (the "Defendant"). The Plaintiffs seek a

declaratory judgment that (1) the Defendant breached a restrictive use condition within the warranty deed on real property at 2530 Pittsburg Avenue, Winston-Salem, North Carolina (the "Property"), (2) that fee simple interest in the Property has reverted back to the Plaintiffs, and (3) the Defendant no longer has title or a cognizable interest in the Property. In its cross-motion for summary judgment, the Defendant counters that its current use of the Property for storage of child care equipment and technology conforms to the deed's use restriction, any reverter clause has not been triggered, and summary judgment should be entered in its favor.

For the reasons set forth below, the Court finds there are no material facts in dispute, concludes the Plaintiffs are entitled to judgment as a matter of law, and therefore, grants the Plaintiffs' motion for summary judgment and denies the Defendant's cross-motion for summary judgment.

PROCEDURAL HISTORY

The Defendant-Debtor filed a petition for relief under chapter 11 of the Bankruptcy Code on August 17, 2020 and elected to proceed under subchapter V. The Defendant operates a daycare center in Mocksville, North Carolina, offering full and part-time child care for children with special needs. In its amended schedules, the Defendant also included an ownership interest in the Property, which formerly served as an additional daycare operation for the Defendant before the Defendant closed the facility in 2014. In its § 1188(c) status report filed on October 6, 2020, the Defendant represented that it was investigating a potential sale, improvement, and

leaseback of the building space and had already interviewed several real estate brokers to aid the Defendant in that endeavor.

After forecasting its position on the Defendant's intended sale of the Property, the City of Winston-Salem filed a motion for relief from stay to allow the City to pursue a resolution of the matter in state court. The City sought a state-court determination that the Defendant failed to utilize the Property in the required manner and, as a result, the Property had reverted back to the City and Forsyth County. The Court denied the stay relief motion, finding the balance of the pertinent factors derived from *In re Robbins*, 964 F.2d 342, 345 (4th Cir. 1992) supported denial, specifically that the matter could be more efficiently resolved in the bankruptcy court and that a timely determination on ownership of the Property was critical to advancing the subchapter V bankruptcy case. The Court also noted that both the Plaintiffs and the Defendant consented to bankruptcy court adjudication of this matter.

The Plaintiffs initiated this adversary proceeding against the Defendant on December 30, 2020, seeking a declaratory judgment under 28 U.S.C. § 2201 that the Defendant's use of the Property did not conform to the conditions placed upon the Defendant in the deed, that the deed's reverter clause had been triggered, and that the Plaintiffs were now the holders of fee simple interest in the Property. The Defendant quickly filed an Answer on January 6, 2021 (Docket No. 6), asserting that its current use of the Property is permitted under the deed and it remains the title holder of the Property. The Defendant also asserted several generic affirmative

3

defenses, including estoppel, waiver, and laches, but without any detailed connection to the underlying facts of this proceeding.

The Plaintiffs filed a motion for summary judgment and supporting brief on May 7, 2021 (Docket No. 12, 13),[1] and the Defendant filed its cross-motion for summary judgment and supporting brief the same day (Docket No. 14, 15). The Defendant filed a response opposing the Plaintiffs' motion for summary judgment on May 28, 2021 (Docket No. 16). After all response and reply deadlines expired, the Court determined a hearing to be unnecessary and the motion and cross-motion for summary judgment were fully submitted as of June 11, 2021.

APPLICABLE LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. In applying this standard, a court will "view all reasonable inferences drawn from the evidence in the light that is most favorable to the non-moving party." *Smith v. Collins*, 964 F.3d 266, 274 (4th Cir. 2020). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Shee Atika Languages, LLC. v. Glob. Linguist Sols., LLC*, 601 F. App'x 224, 225 (4th Cir. 2015) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). If there clearly exist material, factual issues "that properly can be resolved only by a finder of fact because they may reasonably be

---

[1]  Unless otherwise indicated, the record citations refer to Adversary Proceeding No. 20-06194, rather than the underlying bankruptcy case, Case No. 20-50632.

resolved in favor of either party," then summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). Though viewed in the light most favorable, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015) (citation omitted).

When presented with cross-motions for summary judgment, as in this proceeding, "the court must consider each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law. When considering each individual motion, the court must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003), *cert. denied*, 540 U.S. 822 (2003) (internal quotation marks omitted). The court must deny both motions if it finds there is a genuine issue of material fact, "[b]ut if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." 10A CHARLES A. WRIGHT &

ARTHUR R. MILLER, FEDERAL PRAC. & PROC. CIV. § 2720 (4th ed. 2021). Accordingly, here, the uncontested material facts are construed in the light most favorable to the Defendant for the purposes of the Plaintiffs' motion for summary judgment; for purposes of the Defendant's cross-motion for summary judgment, the facts are viewed in the light most favorable to the Plaintiffs.

UNDISPUTED MATERIAL FACTS

The Court finds the following facts to be undisputed and material to the adjudication of these cross-motions for summary judgment. The following facts are taken from the statements of fact and responses thereto submitted in support of the cross-motions for summary judgment (Docket No. 13, 16),[2] as well as exhibits offered by the parties that are not challenged. The Court recites only those facts relevant to the claims and defenses at issue.

1. The real property at issue before the Court is located at 2530 Pittsburg Avenue, Winston-Salem, Forsyth County, North Carolina. The Property is approximately 1.41 acres in size, consists of a one-story brick building and playground structures, and is located in a residential community within Winston-Salem and Forsyth County. (Docket No. 1, ¶ 9; Docket No. 13, ¶ 1; Docket No. 15, p. 1).

2. The City and the County each acquired a one-half interest in the Property by warranty deed dated October 26, 1972 and recorded in Book 1040 at Page 284 of the Forsyth County Registry. (Docket No. 1, ¶ 11).

---

[2] The Defendant admitted to all facts in the Plaintiffs' statement of facts, except for those in paragraph 16, which relate to the Defendant's current use of the Property (Docket No. 16, p.2). For facts relating to the Property's use, the Court accepts as true, for purposes of determining the Plaintiffs' motion for summary judgment, the deposition testimony provided by the Defendant's Executive Director, which was submitted by the Defendant as part of its cross-motion for summary judgment (Docket No. 15, Ex. D).

6

3. Defendant Northwest Child Development Centers, Inc., f/k/a Northwest Child Development Council, Inc. d/b/a Mud Pies Child Development began leasing the Property from the Plaintiffs shortly thereafter for the purposes of operating a childcare center. (Docket No. 1, ¶ 11).

4. By Resolution dated October 27, 1997, the Winston-Salem Board of Alderman authorized conveyance of the City of Winston-Salem's one-half interest in the Property to the Defendant, pursuant to N.C. Gen. Stat. § 160A-279. (Docket No. 1, Ex. C). The Resolution states the Defendant "has leased the site since 1971 and used it as a child care facility" and that the Defendant requested the Plaintiffs convey the Property to enable the Defendant "to better serve child care needs within the area." (Docket No. 1, Ex. C).

5. By Resolution dated November 10, 1997, the Forsyth County Board of Commissioners authorized conveyance of the County's one-half interest in the Property to the Defendant, pursuant to N.C. Gen. Stat. § 160A-279. (Docket No. 1, Ex. D). The Resolution states that the Defendant "has leased the site for several years and used it as a child day care facility as a community development program," and that the Defendant requested that the Plaintiffs convey the Property to "enable [the Defendant] to secure financing for improvements and expansion to better serve child day care needs within the community." (Docket No. 1, Ex. D).

6. The Plaintiffs conveyed title to the Property to the Defendant by warranty deed (Docket No. 1, Ex. E, the "Deed") recorded on January 9, 1998, in Book 1980 at Page 2961 of the Forsyth County Registry (Docket No. 1, ¶ 16; Docket No. 15, ¶ 10).

7. The Deed contained the following clause (the "Use Restriction") that would be triggered if the Defendant ceased using the Property in the prescribed manner:

> UPON THE CONDITION that the property herein conveyed shall be used only for not-for-profit child day care and related purposes, and provided always that if, subsequent to this conveyance, GRANTEE shall use the property for some purpose other than not-for-profit child day care and related purposes, then GRANTOR at its option may declare a termination in favor of GRANTOR of the title, and of all rights and interests in and to the property herein conveyed, and that such title and all rights and interests of GRANTEE, and his successors and assigns to and in the property, shall revert to GRANTOR.

8. The Plaintiffs did not require the Defendant to pay any consideration to purchase the Property. (Docket No 1, ¶ 17; Docket No. 6, ¶ 17).

9.  In his deposition, Kirk Bjorling, who is employed as the City of Winston-Salem's real estate administrator, testified that in a sale of property to a nonprofit carrying out a public purpose, "the deed and so forth would be drafted by the city attorney's office." (Docket No. 15, Ex. A, Bjorling Dep. 15:5-6).

10. The Defendant has been the record owner of the Property since January 9, 1998. (Docket No. 13, ¶ 4).

11. In 2013, the City of Winston-Salem began requiring the Defendant to file with the City a Certificate of Compliance in which the Defendant had to certify whether it had used the Property in accordance with the Use Restriction throughout the prior calendar year. (Docket No. 13, ¶ 8).

12. The Defendant attached to its Certificate of Compliance for the 2014 calendar year a letter dated January 27, 2015, informing Kirk Bjorling that the Defendant had "surrendered its state license at the MudPies Coliseum location (2530 Pittsburg Ave) effective February 11, 2014 due to funding cuts both local and state." That same letter also stated that the Defendant was "currently working with several local organizations to obtain funding to full [sic] utilize [the Property]. Our goal is to use the facility as a lab school – training child care educators and provide child care services once funding is secured. We are also seeking funding to offer Summer Camp 2015 for children age 5-12 at the Coliseum location." (Docket No. 13, ¶ 8).

13. The Defendant has not operated a day care or child care facility at the Property at any time since February 11, 2014. (Docket No. 13, ¶ 9).

14. In its Certificate of Compliance for the 2015 calendar year, the Defendant certified to the City of Winston-Salem that the Property was still being used and operated in accordance with the Use Restriction and included information about summer day camps it was planning to host at the Property during 2016. (Docket No. 13, ¶ 10).

15. In its Certificate of Compliance for the 2016 calendar year, the Defendant certified to the City of Winston-Salem that the Property was still being used and operated in accordance with the Use Restriction. (Docket No. 13, ¶ 11).

16. In its Certificate of Compliance for the 2017 calendar year, the Defendant certified to the City of Winston-Salem that the Property was still being used and operated in accordance with the Use Restriction. The Defendant also attached to that 2017 Certificate of Compliance a copy of its Application for a Child Care License at the Property. (Docket No. 13, ¶ 12).

17. In its Certificate of Compliance for the 2018 calendar year, the Defendant certified to the City of Winston-Salem that the Property was still being used and operated in accordance with the Use Restriction. (Docket No. 13, ¶ 13).

18. The Defendant never submitted a Certificate of Compliance for the 2019 calendar year to the City of Winston-Salem. (Docket No. 13, ¶ 14).

19. The Defendant discontinued water and sewer service from the City of Winston-Salem at the Property in October 2019. (Docket No. 13, ¶ 15).

20. In her deposition, April Broadway, the Defendant's Executive Director, testified that the Property was used "mainly [as] storage space" for "surplus items" like daycare equipment and technology. (Docket No. 15, Ex. D, Broadway Dep. 15:2-16:2).

21. The Defendant formerly owned and operated another childcare center located at 251 East Seventh Street in Winston-Salem, North Carolina. The Defendant closed that childcare center in November 2018. (Docket No. 13, ¶ 17).

22. Since November 2018, the Defendant has operated only one childcare center in the state, located at 622 North Main Street, Mocksville, North Carolina, which is in Davie County. (Docket No. 13, ¶ 17).

23. The Defendant has not operated any childcare centers in either Winston-Salem or Forsyth County since November 2018. (Docket No. 13, ¶ 17).

DISCUSSION

## 1. A Declaratory Judgment is Permissible Relief in this Adversary Proceeding

The Plaintiffs' first and only claim for relief is to request a declaration, pursuant to the Declaratory Judgment Act, that the Use Restriction within the Property's Deed has been violated and that, therefore, the reverter clause has been triggered and the Defendant has no title, interest, estate, lien, or other right, legal or equitable, in the Property (Docket No. 1). Rather than pursuing relief through a state court action, the Plaintiffs initiated this adversary proceeding to obtain a determination of whether the Defendant has any cognizable interest in the

Property. Such relief fits squarely within the underlying purpose of the Declaratory Judgment Act, which is "to afford a speedy and inexpensive method of adjudicating legal disputes without invoking the coercive remedies of the old procedure, and to settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationships." *Furniture Comfort Corp. v. Baldine*, 2:95CV00236, 1995 U.S. Dist. LEXIS 12294, at *2 (M.D.N.C. July 18, 1995) (*quoting Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)).

The Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). *See, e.g.*, *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942); *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998). This Court is a unit of the District Court for the Middle District of North Carolina under 28 U.S.C. § 151, and it may issue declaratory relief in a proceeding arising under the Bankruptcy Code, or arising in or related to a case under the Bankruptcy Code by virtue of the reference provided for by 28 U.S.C. § 157(a) and Local Civil Rule 83.11.

This Court enjoys discretion in deciding whether to consider a declaratory judgment action or abstain from hearing it. *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 421 (4th Cir. 1998). In considering whether to exercise that discretion and grant declaratory relief pursuant to the Declaratory Judgment Act,

the Fourth Circuit Court of Appeals has held that a court should consider whether it (1) "will serve a useful purpose in clarifying and settling the legal relations in issue," and (2) "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.* at 422.[3]

Here, the parties' dispute as to whether the Defendant's current use of the Property conforms with the Use Restriction in the Deed directly impacts whether the Property is property of the Defendant's bankruptcy estate under 11 U.S.C. § 541. Courts have utilized the Declaratory Judgment Act to determine the enforceability of restrictive language within deeds. *See, e.g.*, *United States v. Integrated Cmty. Servs. of Parkersburg, Inc.*, No. 2:19-CV-00506, 2020 WL 5778105, at *5 (S.D.W. Va. Sept. 28, 2020) (granting declaratory judgment that defendant breached conditions subsequent within a deed); *BP W. Coast Prod., LLC v. Shalabi*, No. C11-1341 MJP, 2013 WL 4039380, at *8 (W.D. Wash. Aug. 6, 2013) (issuing a declaratory judgment as to whether deed restrictions were enforceable restrictive covenants). The Court finds that granting declaratory relief will clarify whether the Defendant's use of the Property is in violation of the Use Restriction and, therefore, the parties' respective rights in the Property. This relief will resolve the uncertainty that is impeding the Defendant's ability to confirm a plan of reorganization under chapter 11 of the Bankruptcy Code.

---

[3] The Fourth Circuit has provided four additional factors to consider in granting a declaratory judgment when a parallel state action is pending. *See Kapiloff*, 155 F.3d at 493–94. As the Plaintiffs have not initiated any state court action, the Court need not consider these additional factors in determining whether to issue a declaratory judgment in this proceeding.

Accordingly, the Court will turn to the question of whether, under North Carolina law, the Defendant's use of the Property for storage constitutes a breach of the Deed's Use Restriction.

2. The Scope of the Use Restriction and the Defendant's Potential Breach

In turning to the question at the root of a declaratory judgment in this proceeding, the Court endeavors to interpret the range of permitted uses embodied in the Use Restriction and whether the Defendant's attested use of the Property for storage purposes is within that permissible range. Determining the existence and enforceability of a condition subsequent or a fee simple determinable providing for reverter or a right of reentry is a matter of state law. Consequently, the Court will turn to North Carolina law for interpretive guidance in this matter.

*A. The Defendant Held an Interest in Fee Simple Subject to a Condition Subsequent*

The threshold question is whether the Use Restriction constitutes a fee simple determinable or a fee simple subject to a condition subsequent. An estate in fee simple determinable "is created by a limitation in a fee simple conveyance which provides that the estate shall *automatically* expire upon the occurrence of a certain subsequent event." *Station Assocs., Inc. v. Dare Cnty*, 350 N.C. 367, 370 (1999) (citing *Elmore v. Austin*, 232 N.C. 13, 20–21 (1950)) (emphasis added). Conversely, a fee simple subject to a condition subsequent "does not terminate automatically upon the happening of a stated event," but instead provides a right of re-entry, essentially requiring the grantor to "take affirmative action in order to terminate the estate." *Cummings v. United States*, 409 F. Supp. 1064, 1068 (M.D.N.C. 1976).

12

The Plaintiffs contend that the Use Restriction evidences a fee simple determinable and that the interest reverted automatically when the Defendant surrendered its state license in 2014 (Docket No. 13, ¶ 19). The Defendant counters that the Use Restriction is instead a condition subsequent and that the Plaintiffs never exercised their right to reentry (Docket No. 15, ¶ 12; Docket No. 16, pp. 5–6).

While the language necessary to create a condition subsequent or fee simple determinable "need not conform to any set formula[,]" *Station Assocs.*, 350 N.C. at 373 (internal quotation omitted), a deed must use precise language clearly evidencing such an intent. *Id.* at 370 ("The law does not favor a construction of the language in a deed which will constitute a condition subsequent unless the intention of the parties to create such a restriction upon the title is clearly manifested."); *see also* 2 WEBSTER'S REAL ESTATE LAW IN NORTH CAROLINA § 18.02 (2021) ("A mere statement of the purpose for which the land is to be used, without more, is not sufficient to create a condition."). Additionally, "[i]f the language is such as to require a choice between a determinable estate … or an estate on condition subsequent … the latter, being less drastic, is to be preferred." 1 Simes and Smith, THE LAW OF FUTURE INTERESTS § 248 (3d ed. 2021).

The Court finds the language within the Use Restriction clearly evidences the parties' intent to limit the permissible use of the Property and provide for potential return of title in the event of non-conforming use. Given the language choice, however, the Court finds that the Use Restriction created a fee simple subject to a condition subsequent rather than a fee simple determinable. The remedy for failure

13

to use the Property in the prescribed manner is not automatic; rather, the Deed states that if the Grantee "shall use the property for some purpose other than not-for-profit child day care and related purposes, then GRANTOR *at its option may declare a termination* in favor of GRANTOR of the title." (Docket No. 1, Ex. E) (emphasis added). The use of the words "option" and "may" indicate the Plaintiffs could conceivably elect not to terminate the Defendant's interest if the Defendant engaged in a prohibited use. The language employed in the Use Restriction also parallels the example of a condition subsequent provided in a leading treatise on North Carolina real estate law. *See* 2 WEBSTER'S REAL ESTATE LAW IN NORTH CAROLINA § 18.02 (2021).[4]

Therefore, the Court finds the language in the Use Restriction contains a condition subsequent and the Plaintiffs must take affirmative action to regain title. Specifically, the Deed provides for the Plaintiffs to "declare a termination ... and all rights and interests in and to the property ... shall revert to the [Plaintiffs]". The Court also finds, however, that this adversary proceeding constitutes just such a required action by which the Plaintiffs may declare a termination. *See Higdon v. Davis*, 315 N.C. 208, 217 (1985) (holding that, "if re-entry was necessary, the plaintiffs' action herein to quiet title constitutes re-entry."); *Britton v. Taylor*, 168 N.C. 271, 275 (1915) (holding that "a possessory action may be maintained upon the

---

[4] Professor Webster noted the following language would create an estate in fee simple subject to a condition subsequent:

To *A* and his heirs in fee *but if* the premises are ever used for commercial purposes, the grantor shall have the right to re-enter and terminate the estate granted.

2 WEBSTER'S REAL ESTATE LAW IN NORTH CAROLINA § 18.02 (2021).

breach of a condition subsequent without a prior reentry or demand of possession; such an action being equivalent thereto."). Consequently, a declaratory judgment in the Plaintiffs' favor is tantamount to the Plaintiffs' exercising their right of reentry, such that title and all rights and interests in the Property shall revert to them.

### B. Storage of Equipment Does Not Constitute a "Related Purpose" to Not-for-Profit Child Day Care Under the Deed's Use Restriction

There is a single crux question that will decide both cross-motions for summary judgment: was the Defendant's use of the Property for storing surplus equipment and technology to utilize at its other child care location a breach of the Deed's Use Restriction? The answer hinges on the interpretation of the Use Restriction, which limits the Defendant's use of the Property to "not-for-profit child day care and related purposes." As the interpretation of the Deed is a question of state law, the proper tools for devising the meaning of the Use Restriction are determined by North Carolina statute and caselaw. *Rutledge v. Feher*, 804 S.E.2d 806, 809 (N.C. App. 2017).

Under state law, "discerning the intent of the parties is the ultimate goal in construing a deed." *Station Assocs.*, 350 N.C. at 373 (citing *Mattox v. State*, 186 S.E.2d 378, 382 (N.C. 1972); *see also* N.C. Gen. Stat. § 39-1.1(a). The North Carolina Supreme Court has been clear that determining the parties' intent for purposes of a deed is the purview of the court, even if the language is found to be ambiguous:

> We believe that the correct view is that the effect to be given unambiguous language contained in a written instrument is a question of law, but where the language is ambiguous so that the effect of the instrument must be determined by resort to extrinsic evidence that raises a dispute as to the parties' intention, the question of the parties' intention becomes one of fact. However, the determination of the

parties' intention is not for the jury but is the responsibility of the judge in construing and interpreting the meaning of the instrument. Ordinarily, the parties' intent must be ascertained from the deed or other instrument creating the restriction. However, when the language used in the instrument is ambiguous, the court, in determining the parties' intention, must look to the language of the instrument, the nature of the restriction, the situation of the parties, and the circumstances surrounding their transaction.

*Runyon v. Paley*, 416 S.E.2d 177, 186 (N.C. 1992) (cleaned up).

With particular regard to restrictive use language within a deed, "[c]ovenants and agreements restricting the free use of property are strictly construed against limitations upon such use[,]" *Long v. Branham*, 156 S.E.2d 235, 239 (N.C. 1967), but such restrictions "should not be construed in an unreasonable manner or a manner that defeats the plain and obvious purpose[.]" *Parker v. Figure "8" Beach Homeowners' Ass'n, Inc.*, 611 S.E.2d 874, 876 (N.C. App. 2005) (cleaned up*); see also* 2 WEBSTER'S REAL ESTATE LAW IN NORTH CAROLINA § 18.06 (2020). Restrictive language is also strictly construed against the drafting party. *Cnty of Moore v. Humane Soc'y of Moore Cnty, Inc.*, 578 S.E.2d 682, 685 (N.C. App. 2003).

In considering the wording of restrictive provisions within a deed, "the court ultimately endeavors to determine and effectuate the intent of the parties based on the written language they used." *Rutledge v. Feher*, 804 S.E.2d at 809 (citing *Strickland v. Jackson*, 130 S.E.2d 22, 24 (N.C. 1963)). "When terms with special meanings or terms of art appear in an instrument, they are to be given their technical meaning; whereas, ordinary terms are to be given their meaning in ordinary speech." *Cnty of Moore*, 578 S.E.2d at 685 (N.C. App. 2003); *see also Seawell v. Hall*, 116 S.E. 189, 190 (N.C. 1923) ("[I]t is proper to seek for a rational

16

purpose in the language and provisions of the deed and to construe it consistently with reason and common sense. If there is any doubt entertained as to the real intention, we should reject that interpretation which plainly leads to injustice and adopt that one which conforms more to the presumed meaning because it does not produce unusual and unjust results."). In applying the "ordinary" meaning of terms, North Carolina courts have found that "[a] dictionary is an appropriate place to gather the natural meaning of words." *Agnoff Family Revocable Trust v. Landfall Assocs.*, 493 S.E.2d 308, 309 (N.C. App. 1997) (internal citation omitted); *see also Cnty of Moore*, 589 S.E.2d at 685.

Applying this law to the language of the Use Restriction, specifically the phrase "not-for-profit child day care and related purposes," the Court first dispenses with the Plaintiffs' argument that the Defendant was required to use the Property "only for not-for-profit child day care *and* related purposes, not child day care *or* related purposes." (Docket No. 13, ¶ 24) (emphasis original). The Plaintiffs assert that finding the Defendant's storage of surplus childcare equipment to be a permissible use of the Property "would require reading the Deed's Use Restriction with an 'or' instead of an 'and.'" (Docket No. 13, ¶ 24). The Court does not find this argument persuasive and instead concurs with the Defendant's position that a better reading of the Use Restriction is that the word "and" should be read to include use of the Property either for child care or for "related purposes." (Docket No. 16, p. 3). As other courts have noted, "[t]he problem with *and* is that 'chameleonlike, it takes its color from its surroundings.'" *Shaw v. Nat'l Union Fire*

*Ins. Co.*, 605 F.3d 1250, 1253 (11th Cir. 2010) (quoting *Peacock v. Lubbock Compress Co.*, 252 F.2d 892, 893 (5th Cir. 1958)). The usual meaning of the word "and" is conjunctive, meaning "A and B, jointly or severally" rather than disjunctive, meaning "A and B, jointly but not severally." *Mason v. Range Res.-Appalachia LLC*, 120 F. Supp. 3d 425, 445 (W.D. Pa. 2015) (quoting BRYAN A. GARNER, A DICTIONARY OF MODERN LEGAL USAGE 624 (2d. ed. 1995)). Further supporting the Defendant's position is the default rule, which states that, "unless the context dictates otherwise, the 'and' is presumed to be used in its ordinary sense…" *Hughes v. Nationwide Bank*, 387 F. Supp. 3d 612, 625 (W.D. Pa. 2019) (quoting *Reese Bros., Inc. v. United States*, 447 F.3d 229, 235–36 (3d Cir. 2006)). As the Deed and Use Restriction do not indicate any clear meaning to "and" in this context, the Court reads the word in its conjunctive sense and finds the Defendant could remain in compliance by using the Property for *either* not-for-profit child day care *or* for related purposes.

In considering whether the Defendant has breached the applicable condition in the Use Restriction, the uncontested material facts demonstrate the Defendant has not used the Property for "not-for-profit child day care" since surrendering its license to do so in 2014, but at most, is using the Property solely for "related purposes." This situation, therefore, is easily distinguishable from those decisions finding no breach of a condition subsequent where the premises were still used in the same intended manner, but where the grantee had altered aspects of who delivered or received services provided at the property. *See, e.g.*, *Lassiter v. Town of*

*Oxford*, 234 F.2d 217, 218-19 (4th Cir. 1956) (finding North Carolina town did not violate condition subsequent where land was still used as a golf course but where the municipality had leased out operation of the course to a private entity); *Cnty of Moore*, 578 S.E.2d at 685 (finding humane society was still using the property as an animal shelter and did not breach the condition subsequent by terminating its contract with the county).

The outcome of both cross-motions turns then on whether using the Property for storing childcare equipment and technology is a "related purpose" to not-for-profit child day care under the Use Restriction. Unlike *Lassiter* and *Moore*, the Deed at issue here contains the expanding phrase "and related purposes." *Lassiter*, 234 F.2d at 217; *Moore*, 578 S.E.2d at 684–85. The question is whether "related purposes" expands so far as to capture the Defendant's attested use of the Property for equipment and technology storage. The Court must first look to the Deed itself to determine the parties' intent regarding the scope of "related purposes." Only if the language is ambiguous will the Court consider the nature of the restriction, the situation of the parties, and the circumstances surrounding their transaction. *Runyon v. Paley*, 416 S.E.2d at 186 (cleaned up).

There is no definition provided in the Deed for what constitutes a "related purpose" (Docket No. 15, Ex. C). The Court is left to discern the ordinary meaning of the term and whether the Defendant's use of the Property for storage is "related" to not-for-profit child day care. Dictionaries of the time describe "related" in broad terms as "connected" or "akin." *See, e.g.*, BLACK'S LAW DICTIONARY 1288 (6th ed.

19

1990) (defining related as "standing in relation; connected; allied; akin."); MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 987 (10th ed. 1997) (defining related as "connected by reason of an established or discoverable relation"); OXFORD ENGLISH DICTIONARY (2d ed. 1989) (defining related as "having relation to, or relationship with, something else"). This expansive definition does not, however, necessarily foreclose finding the language unambiguous. Specifically, "[t]he fact that 'related' can encompass a wide variety of relationships does not necessarily render the word ambiguous." *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.*, 855 P.2d 1263, 1271 (Cal. 1993) (finding no ambiguity because the plaintiff's construction of the term related was "not reasonable.").

While the dictionaries may reflect that the ordinary meaning of "related" can be extensive, courts have held that definition does not extend ad infinitum. The Supreme Court of North Carolina acknowledged the broad definition of "related" but also noted it "cannot conclude that the existence of a *tangential or incidental connection*" is sufficient to find something truly related. *City of Asheville v. State*, 794 S.E.2d 759, 775–76 (N.C. 2016) (emphasis added). In considering the meaning of "related acts" within the context of an insurance policy, the Seventh Circuit also agreed that "the common understanding of the word 'related' covers a very broad range of connections, both causal and logical." *Gregory v. Home Ins. Co.*, 876 F.2d 602, 606 (7th Cir. 1989). *Gregory* cautions, however, that "[a]t some point, of course, a logical connection may be too tenuous reasonably to be called a relationship, and the rule of restrictive reading of broad language would come into play." *Id.*

Applying this guidance to the case at hand, the Court does not find the meaning of "related purposes" to be ambiguous within the context of the Deed and Use Restriction because the construction advocated by the Defendant is not reasonable. Specifically, this Court cannot endorse a definition of "related purpose" that encompasses the passive storage of childcare equipment and technology. Per the undisputed material facts, the Defendant has not operated a child day care facility at the Property since surrendering its license for that location in 2014 and no longer operates any facility in the City of Winston-Salem or Forsyth County. The Defendant's only purported use of the Property is as a storage location for its sole remaining child care facility in Mocksville, which is in neighboring Davie County. This Court cannot adopt a reading of "related purposes" that finds storing equipment, for use at a separate child day care facility *in a different county*, to be within the "related purposes" intended by the parties. Such a construction would stretch the meaning of "related purposes" beyond reason and lead to "unusual and unjust results." *See Seawell*, 116 S.E. at 190.

Even accepting as true that all the equipment and inventory located at the Property can be used at the Defendant's remaining childcare center in Mocksville, this is, *at best*, a "tangential or incidental connection" to using the Property for "not-for-profit child day care." *City of Asheville*, 794 S.E.2d at 775–76. This Court follows the reasoning of the North Carolina Supreme Court in finding that a tangential or incidental connection is insufficient to "relate" to not-for-profit child day care. *Id.*

21

Additional insight can be drawn from *Mattox v. State*, 186 S.E.2d 378 (N.C. 1972), where the North Carolina Supreme Court considered whether the state had violated a condition requiring it to use property as a Highway Patrol Headquarters and Highway Patrol Radio Station. The court found that the state failed to comply with the conditions at two junctures: (1) when it briefly abandoned the location altogether in 1968; and (2) when it resumed activities at the location by installing an unmanned, occasionally-used radio and assigning four patrolmen. *Id.* at 383. As to the latter, the *Mattox* Court found that this "attempted token compliance" with the conditions did not equate to using the property "for the purpose for which it was conveyed." *Id.* at 383–84. Here, the Defendant's use of the Property for storage amounts to "attempted token compliance" with the conditions in the Use Restriction and is only incidentally related to the purpose for which the Property was conveyed. While storing equipment for use at a different child day care facility may, in its broadest dictionary meaning, have some relationship to "not-for-profit child day care," this purported use is far too tenuous to be deemed compliant with the Use Restriction.

The Court finds the phrase "related purposes" in the Deed to unambiguously exclude the Defendant's use of the Property for storage. Even if the Court finds the passive storage of equipment to have some relationship to not-for-profit child day care, such a connection would be tangential or incidental at best, and the Defendant's use of the Property for storage is simply an attempt at "token compliance" with the Use Restriction.

22

*C. The Situation of the Parties and the Circumstances of the Transaction Further Support the Finding that "Related Purposes" Does Not Include Storage of Equipment*

Even if the Court determined that "related purposes" is ambiguous within the context of the Deed and the Use Restriction, the circumstances under which the Property was conveyed support the Court's conclusion that passive storage of child care equipment is not encompassed by the term. When the language used in a deed or other written instrument "is ambiguous, the court, in determining the parties' intention, must look to the language of the instrument, the nature of the restriction, the situation of the parties, and the circumstances surrounding their transaction." *Runyon v. Paley*, 416 S.E.2d at 186 (cleaned up); *see also Lassiter*, 234 F.2d at 219.

The circumstances surrounding this transaction do not indicate the parties intended passive equipment storage to be a conforming use under the Deed. At the time the Plaintiffs conveyed the Property in January 1998, the Defendant had been leasing the Property since 1971 for use as a child day care facility. In the resolutions authorizing the conveyance, the Winston-Salem Board of Alderman and the Forsyth County Board of Commissioners explained the purpose of the transaction was to allow the Defendant to "better serve the area" and to "secure financing for improvements and expansion to better serve child day care needs within the community" (Docket No. 1, Ex. C, D). Given the Defendant's operation of a child care center at the Property for a quarter-century prior to the conveyance, as well as the Plaintiffs' understanding that ownership would facilitate "improvements and expansion" of that operation, the Court finds the circumstances surrounding the transaction strongly indicate that ending the child care center and using the

23

Property to store equipment was not a permitted use intended by the parties.

Moreover, the Plaintiffs' resolutions state the intended purpose of the conveyance

was to better serve child care needs "*within the area*" and "*within the community*"

(Docket No. 1, Ex. C, D) (emphases added). It is inconceivable that the parties

intended "related purposes" to encompass using the Property solely for storage of

equipment for use at the Defendant's remaining child care facility in a different

county. While the Defendant's Mocksville location undoubtedly serves the interests

of Davie County, it cannot be said that the Defendant's use of the Property in any

way serves the child care needs of Winston-Salem and Forsyth County.

### D. Interpreting the Defendant's Use of the Property for Storing Equipment as a "Related Purpose" Would Conflict With a Fixed Rule of Law

Even if "related purposes" was determined to be ambiguous, and assuming

the surrounding circumstances did not clearly weigh against the Defendant's

position, this Court could still not endorse an interpretation finding the storage of

child care equipment to be a conforming use under the Deed because such a

construction would run afoul of existing law.

North Carolina law has consistently adhered to the rule that, "in construing a

deed the discovery of the intention of the grantor must be gathered from the

language he has chosen to employ, and all parts of the deed should be given force

and effect, if this can be done by any reasonable interpretation, unless the intention

is in conflict with some unyielding canon of construction, or settled rule of property,

*or fixed rule of law*, or is repugnant to the terms of the grant." *Griffin v. Springer*,

92 S.E.2d 682, 684 (N.C. 1956) (collecting cases) (emphasis added); *see also Bunn v.*

*Wells*, 94 N.C. 67, 69 (1886) ("It is an established rule of the interpretation of deeds, that the intention of the partis should control unless inconsistent with some rule of law."); *Kea v. Robeson*, 40 N.C. 373, 378 (1848) ("Courts are always desirous of giving effect to instruments according to the intention of the parties, as far as the law will allow.").

Even if the Court found it to be a reasonable construction of the Use Restriction, adopting the Defendant's interpretation of "related purposes" would place the parties' purported intention in conflict with a fixed rule of law, specifically N.C. Gen. Stat. § 160A-279. Both Plaintiffs conveyed their interests in the Property to the Defendant pursuant to Section 160A-279 (Docket No. 1, Ex. C, D), which provides, in pertinent part:

> Whenever a city or county is authorized to appropriate funds to any public or private entity which carries out a public purpose, the city or county may, in lieu of or in addition to the appropriation of funds, convey by private sale to such an entity any real or personal property which it owns; provided no property acquired by the exercise of eminent domain may be conveyed under this section; provided that no such conveyance may be made to a for-profit corporation. The city or county shall attach to any such conveyance covenants or conditions which assure that the property will be put to a public use by the recipient entity.
> […]

N.C. Gen. Stat. § 160A-279(a). The statute allows conveyance of city or county property to entities carrying out a public purpose, but also mandates that the transferring city or county "shall attach to any such conveyance covenants or conditions which assure that the property will be put to a public use by the recipient entity." N.C. Gen. Stat. § 160A-279(a). The Defendant's interpretation is that the parties intended the Deed to allow for a wide range of purposes only loosely related

25

to not-for-profit child day care including, in this instance, the Defendant's use of the Property solely for storage of child care equipment. If that was indeed the parties' intention, as the Defendant's interpretation would entail, the conveyance would be in violation of Section 160A-279(a) because the Plaintiffs' attached conditions would not have assured that the Property would be put to a public use.

While this Court is unable to identify any cases that consider the meaning of a "public use" within the specific context of N.C. Gen. Stat. § 160A-279(a), there is a substantial body of persuasive caselaw considering the same question in eminent domain actions. Under that framework, "what is a public use is a judicial question to be decided by the court as a matter of law." *Highway Com. v. Asheville School, Inc.*, 169 S.E.2d 193, 196 (N.C. App. 1969) (citing *Charlotte v. Heath*, 40 S.E.2d 600, 604 (N.C. 1946)). North Carolina courts, observing that "[a] slide-rule definition to determine public purpose for all time cannot be formulated[,]" *Mitchell v. Indus. Dev. Fin. Auth.*, 159 S.E.2d 745, 750 (N.C. 1968), have instead employed a two-prong analysis to aid in determining public use: (1) whether it involves a reasonable connection with the convenience and necessity of the particular municipality; and (2) whether the activity benefits the public generally, as opposed to special interests or persons. *Piedmont Triad Airport Auth. v. Urbine*, 554 S.E.2d 331, 333 (N.C. 2001) (internal citations omitted).

On the first prong, "whether an activity is within the appropriate scope of governmental involvement and is reasonably related to communal needs may be evaluated by determining how similar the activity is to others which [the North

Carolina Supreme Court] has held to be within the permissible realm of governmental action." *Maready v. City of Winston-Salem*, 467 S.E.2d 615, 624 (N.C. 1996). The Court is unable to find any analogous examples where North Carolina courts found storage of equipment that is not for use in that particular municipality to constitute a public use. *Id.* at 623–24. (providing numerous examples of public use including, inter alia, the creation of public parks, public housing, airport facilities, state fairs, and public auditoriums).[5] Moreover, the Defendant's use of the Property is in no way connected with "the convenience and necessity *of the particular municipality*." *Piedmont Triad*, 554 S.E.2d at 333 (emphasis added). As the Court has already described, the equipment and technology stored at the Property is not used within, and does not benefit, either Winston-Salem or Forsyth County.

On the second prong, the Court finds the Defendant's use of the Property primarily benefits its own interests rather than the public generally. This case stands in direct contrast to the findings in *Maready*, where the court found "[t]he public advantages are not indirect, remote, or incidental; rather, they are directly aimed at furthering the general economic welfare of the people of the communities affected." 467 S.E.2d at 625. Conversely, any public advantages found in the

---

[5] The closest comparison may be grain elevators or warehouses, which several courts have found to be in the public use given farmers' and merchants' reliance upon those facilities for shipping products to market. *See, e.g.*, *Munn v. Ill.*, 94 U.S. 113, 130–33 (1876); *Simmons v. Northern Pac. R. Co.*, 180 N.W. 114, 115 (Minn. 1920); *Gurney v. Minneapolis Union Elevator Co.*, 65 N.W. 136, 138 (Minn. 1895). The Defendant's purported use of the Property here is distinguishable as there is no evidence of communal need. Unlike grain elevators or warehouses, the Property does not play an integral role in storing products for market and the equipment stored therein is not used within the community.

Defendant's storage of child care equipment are remote and incidental to the public generally. Moreover, there is no benefit, direct or otherwise, to the people of Winston-Salem and Forsyth County from the storage of equipment for use at a child care facility in Davie County. Accordingly, the Court finds both prongs of the test weigh decisively against finding the Defendant's storage of equipment at the Property constitutes a public use for purposes of N.C. Gen. Stat. § 160A-279(a).

Because the Defendant's use of the Property is not a public use under North Carolina law, an interpretation of the Deed's Use Restriction that allows for storage as a conforming use would, by necessity, require finding that the Plaintiffs transferred the Property in violation of N.C. Gen. Stat. § 160A-279(a) by failing to attach a condition that would assure the Property is used for a public purpose. This Court cannot construe the Deed in such a way that the intent of the grantor "is in conflict with some …. fixed rule of law." *Griffin*, 92 S.E.2d at 684. Even if, contrary to the Court's findings described above, the phrase "related purposes" was ambiguous and the circumstances surrounding the transaction favored the Defendant's view of the parties' intention, this Court may not adopt a construction that places the Plaintiffs' intention in direct conflict with Section 160A-279(a).

3. The Defendant Abandoned All Affirmative Defenses Contained in the Answer

The Plaintiffs further assert that judgment as a matter of law should be entered in their favor as to the affirmative defenses contained in the Defendant's answer. In the answer, the Defendant included several bare-bones affirmative defenses, including estoppel, waiver, and laches (Docket No. 6), but failed to

mention any of these defenses in either the brief supporting its cross-motion for summary judgment or in its response to the Plaintiffs' motion for summary judgment (Docket No. 15, 16). While timely raised in the answer, the Defendant has not provided any facts or evidence supporting the affirmative defenses or "any theory whatsoever about why the Court should not grant summary judgment upon these matters." *Oppenheimer v. ACL LLC*, 504 F. Supp. 3d 503, 503 (W.D.N.C. 2020). Where a party pleads an affirmative defense in the answer, but fails to contest a summary judgment motion on those grounds, the Court may "deem[] those defenses abandoned[.]" *RL 900 Park, LLC v. Ender*, No. 1:18-cv-12121, 2021 WL 738705, at *5 (S.D.N.Y. Feb. 25, 2021); *see also Camarda v. Selover*, 673 F. App'x 26, 30 (2d Cir. 2016) ("Where, as here, a non-moving party submits a partial response arguing that summary judgment should be denied as to some claims while not mentioning others, that response may be deemed an abandonment of the unmentioned claims."); *United States v. Kafleur*, 168 Fed. Appx. 322, 327 (11th Cir. 2006) (finding affirmative defenses abandoned where defenses were pled in answer but not included in defendant's motion for summary judgment or in opposition to the government's motion); *Sales v. Grant*, 224 F.3d 293, 296–97 (4th Cir. 2000) (finding affirmative defense abandoned where the defendant "only cursorily references" it in the answer but "thereafter fails to mention, let alone seriously press, his assertion of that affirmative defense"); *Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260, 269 (7th Cir. 1986) (finding comparative negligence waived where asserted in the answer, but not raised in opposition to summary judgment motion);

*Mickell v. Stirling*, No. 6:15-CV, 2017 WL 626107, at *2 (D.S.C. Feb. 15, 2017, *aff'd* 698 F. App'x 749 (4th Cir. 2017) (finding qualified immunity defense waived where stated in answer, but not argued or even mentioned in the motion for summary judgment). As the Defendant has not supported or referenced its affirmative defenses in the response to the Plaintiff's motion for summary judgment, the Defendant can be deemed to have abandoned these defenses and the Plaintiffs are entitled to summary judgment.

CONCLUSION

Based on the foregoing analysis and findings, the Court finds there are no material facts in dispute. Based upon those facts, and pursuant to the ordinary meaning of the terminology within the Deed, the Court finds the Defendant's use of the Property solely for storage of child care equipment and technology is not a conforming use under the Use Restriction and the Defendant has therefore breached the condition subsequent contained therein. Even if the language in the Use Restriction was found to be ambiguous, the Court's interpretation is further supported by the circumstances surrounding the transaction as the Defendant's use of the Property for storage does not "expand or improve" upon the Defendant's former child care facility, which is now closed, and does nothing to better serve the child care needs of the City of Winston-Salem or Forsyth County. Finally, even if it were inclined to do so, North Carolina rules of deed construction prohibit this Court from adopting the Defendant's interpretation of the Use Restriction because doing

so would require finding that the Plaintiffs transferred the Property in violation of N.C. Gen. Stat. § 160A-279(a).

The Court, therefore, concludes that the Plaintiffs are entitled to judgment as a matter of law. The Defendant's current use of the Property does not conform to the condition subsequent placed upon the Defendant in the Deed, and the Defendant has therefore breached the condition. By filing this adversary proceeding, the Plaintiffs have exercised their right to reentry, such that title and all rights and interests in the Property shall revert to the Plaintiffs.

Accordingly, it is hereby ORDERED that the Plaintiffs' motion for summary judgment is GRANTED.

It is further ORDERED that the Defendant's cross-motion for summary judgment is DENIED.

The Court will enter a separate judgment consistent with the memorandum opinion and order.

**END OF DOCUMENT**

PARTIES TO BE SERVED

City of Winston Salem and County of Forsyth
v.
Northwest Child Development Centers, Inc.

Adversary 20-06194

Joshua H. Bennett on behalf of Defendant Northwest Child
Development Centers, Inc.
via cm/ecf

Frederick Johnson on behalf of Plaintiff Forsyth County NC
via cm/ecf

John R Lawson on behalf of Plaintiff City of Winston-Salem and
Forsyth County, NC
via cm/ecf

William P. Miller, Bankruptcy Administrator
via cm/ecf


Samantha K. Brumbaugh, Subchapter V Trustee
Ivey, McClellan, Gatton & Siegmund
100 South Elm Street
Suite 500
Greensboro, NC 27401

Northwest Child Development Centers, Inc.
622 N. Main St.
Brock Center Lower Level
Mocksville, NC 27028